**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-18-01198-001-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Isaac Garcia-Mendez, | |
| Defendant. | |

Pending before the Court is the Government's motion to involuntarily medicate Defendant Isaac Garcia-Mendez (Doc. 44) pursuant to *Sell v. United States*, 539 U.S. 166 (2003). After reviewing the Parties pleadings and conducting an evidentiary hearing, the Court grants the Government's motion for the reasons discussed below.

## BACKGROUND

Defendant Isaac Garcia Mendez ("Defendant") has been charged with illegal reentry into the United States in violation of 8 U.S.C. § 1326(a) and (b). On November 8, 2018, the Court found that Defendant was not competent to stand trial and ordered him into the custody of the Attorney General. Defendant was later transported to the Federal Medical Center ("FMC") in Springfield, Missouri for evaluation and restoration.

Defendant was evaluated by the FMC staff between January 20, 2019 and May 31, 2019. The FMC doctors evaluated whether Defendant may be subject to involuntary medication under either *Washington v. Harper*, 494 U.S. 210 (1990) or *Sell v. United States*, 539 U.S. 166 (2003). Under *Harper* involuntary medication is permitted in limited

circumstances for inmates who are (1) gravely disabled or (2) represent a significant danger to themselves or others in the context of a prison. In the opinion of the FMC Springfield doctors, involuntary medication pursuant to *Harper* is not appropriate because Defendant is neither gravely disabled nor an imminent risk of danger to himself or others in a correctional environment. The FMC staff further determined, however, that with proper medication and monitoring it is substantially likely that Defendant will be restored to competency. Thus, the Government moved for an order providing that Defendant be involuntarily medicated pursuant to *Sell*. The Court ordered a *Sell* hearing that was held on November 14, 2019. The Government's experts, Dr. Ashley K. Christiansen and Dr. Robert G. Sarrazin, testified at the hearing.

## DISCUSSION

### I. Applicable Law

In *Sell* the Supreme Court recognized that "the Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate." *Sell*, 539 U.S. at 180. *Sell* sets forth the conditions under which a court may allow involuntary administration of medications to restore a defendant to competency. The conditions are as follows:

(1) there must be "important governmental issues at stake";

(2) the administration of the medication must be substantially likely to render the defendant competent to stand trial and substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense;

(3) the medication must be necessary to further those interests; and

(4) the administration of the medication must be medically appropriate.

*Id.* at 180–81. The Government must establish each factor by clear and convincing evidence. *United States v. Ruiz-Gaxiola*, 623 F.3d 684, 693 (9th Cir. 2010).

## II. Analysis

### A. Important Governmental Issues Are at Stake

The Supreme court has explained that "[t]he government's interest in bringing to trial an individual accused of a serious crime is important." *Id.* at 180. However, in assessing the importance of the government's interest in prosecution, the court must consider the facts of the individual case. *Id.*

Defendant is charged with illegal reentry. The parties agree that illegal reentry, on its own, is not sufficient to warrant an important government interest in prosecution. Defendant's present charge, however, is not the only relevant factor. Defendant was convicted for Kidnaping and Burglary in 2001 and Aggravated Assault with a Deadly Weapon in 2016. Moreover, Defendant has been removed from the United States twice. The Government asserts that these prior convictions for dangerous crimes suggest that Defendant poses a substantial risk to the community. This risk is compounded by the Defendant's history of reentry after deportation.

The applicable guideline range should also be considered. *See Ruiz-Gaxiola*, 623 F.3d at 694 (considering the applicable guideline range to determine the first *Sell* factor). Defendant's anticipated post trial guideline range is 51-63 months without considering possible adjustments. This potentially lengthy sentence suggests an important governmental interest in prosecuting Defendant for the current offense. *Id.* (finding that, after deductions for time served, an anticipated sentence of 53-78 months imprisonment supported concluding that the Government had an important interest in prosecuting a defendant charged with illegal reentry).

The Court must also consider, however, whether the facts of Defendant's case present any special circumstances that lessen the importance of the Government's interest in prosecution. *Sell*, 539 U.S. at 180. For example, assuming the defendant will receive credit for time served toward any sentence ultimately imposed, the Government has a reduced interest in prosecuting a defendant who has already been confined for a significant amount of time. *Id.* The same is also true if the defendant may be subject to a lengthy

confinement in an institution for the mentally ill. *Id.* Defendant asserts that such special circumstances are present here. Defendant has already been confined for sixteen months, and his treating physician requests at least four months of involuntary medication to restore Defendant to competency. The Government's experts also testified that complete restoration could take up to eight months, especially if Defendant remains uncooperative in taking medication. Thus, Defendant asserts that by the time Defendant is sentenced in this matter his actual post trial sentence, after being credited for time served, may be insignificant. Defendant's argument in this regard is not persuasive.

When the duration of Defendant's present confinement (16 months) and anticipated time to return to competency (4 months) are deducted from the applicable guidelines range (51-63 months), Defendant remains subject to an additional 31-43 months of imprisonment. The Court acknowledges that Defendant's time served and potential for civil commitment undercut the Government's interest in bringing Defendant to trial. *Sell,* 539 U.S. at 180 (noting that the potential for civil confinement and time in present confinement "affect[], but do[] not totally undermine, the strength of the need for prosecution.") Nevertheless, because of the substantial length of Defendant's post trial incarceration (even after accounting for anticipated time served credits) and Defendant's significant criminal history, the first factor weighs in favor of the Government.

**B.     Administration of The Drugs Is Substantially Likely To Render Defendant Competent To Stand Trial And Is Substantially Unlikely To Have Side Effects That Will Interfere Significantly With Defendant's Ability To Assist Counsel In Conducting A Trial Defense.**

The Government has set forth a proposed treatment plan for Defendant that it argues is substantially likely to render him competent to stand trial. The Government also asserts that the proposed plan is substantially unlikely to cause side effects that will interfere with Defendant's ability to assist counsel during trial. The Government's experts provided uncontroverted evidence that 70 to 80 percent of patients similarly situated to Defendant are restored with a similar treatment plan as the one proposed here. Defendant's principle rebuttal is that the Government cannot say with certainty that the forced medication will

not cause side effects that will significantly interfere with Defendant's ability to assist counsel in his defense. However, based on both Dr. Christiansen's and Dr. Sarrazin's testimony, none of the potential side effects will interfere with Defendant's ability to communicate with his attorney. Rather, the administration of the medication will improve Defendant's ability to assist counsel in his defense.

Moreover, the proposed plan is intended to minimize any foreseeable negative reactions. For example, the proposed treatment plan calls for the administration of the lowest effective dose. Defendant will also be closely monitored. Dr. Sarrazin testified that most of the side effects of antipsychotic medications can be reduced or eliminated with competent psychiatric oversight and management. And, to the extent there are likely side effects they are not serious (i.e. dry mouth, dry eyes, sedation).

Considering the evidence presented, the Court finds that the government has established by clear and convincing evidence that the proposed treatment plan is substantially likely to render Defendant competent for trial, and substantially unlikely to cause side effects that will interfere significantly with Defendant's ability to assist counsel in conducting his defense.

### C. Medication is Necessary to Further the Government's Interests.

The third factor requires the Government to prove by clear and convincing evidence "that any alternative, less intrusive treatments are unlikely to achieve substantially the same results." *Sell*, 539 U.S. at 181. According to the Government's experts, Defendant's symptoms are unlikely to improve, and have not improved, without treatment with antipsychotic medication. Defendant concedes that less intrusive methods are unlikely to be effective in restoring his competency. Thus, the Court finds that the administration of the medication is necessary to further the Government's interest in this case.

### D. The Administration of the Medication is Medically Appropriate.

The fourth factor requires the Court to find that the involuntary medication is "medically appropriate, i.e., in the patient's best medial interest in light of his medical condition." *Sell*, 539 U.S. 181. Defendant's primary mental illness is schizophrenia.

Neither party disputes that the administration of antipsychotic medications is the accepted medical treatment for individuals afflicted with this illness. The Court finds the proposed treatment is medically appropriate.

## CONCLUSION

After carefully weighing the four *Sell* factors, the Court grants the Government's motion requesting an Order permitting the Government to involuntarily medicate Defendant to restore his competency.

**IT IS SO ORDERERED** that the Government's motion to involuntarily medicate Defendant Isaac Garcia-Mendez (Doc. 44) pursuant to *Sell v. United States*, 539 U.S. 166 (2003) is **GRANTED**.

Dated this 19th day of November, 2019.

_____
G. Murray Snow
Chief United States District Judge

cc: USMS